IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Shannon Pohorecki, etc.,

                       Plaintiff,

         -vs-

Anthony Wayne Local School District,

                     Defendant.

Case No. 3:08 CV 1709

MEMORANDUM OPINION
AND ORDER

JUDGE JACK ZOUHARY

**INTRODUCTION**

This is an administrative appeal brought under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq.*, as amended (IDEA).  Plaintiff-Appellant Shannon Pohorecki is the mother of J.C., her son, and brings this action on behalf of herself as well as J.C.  Defendant-Appellee is the Board of Education of Anthony Wayne Local School District (the District).  Plaintiff appeals the decision of the State Level Review Officer (SLRO) affirming the decision of the Independent Hearing Officer (IHO).  Plaintiff asserts the District failed to provide J.C. with a "free appropriate public education" (FAPE) and that J.C. is entitled to compensatory services.  Specifically, Plaintiff challenges a portion of the 2006-07 individualized education program (IEP) for J.C, as well as the development of the 2007-08 IEP.

For the reasons stated below, this Court affirms the SLRO's decision, grants the District's Motion for Judgment (Doc. No. 15), and denies Plaintiff's Motion for Judgment (Doc. Nos. 12-13).

## BACKGROUND

### Factual Overview

J.C. was born March 2, 1993 and has attended school within the District since the second grade. In the past, J.C.'s medical diagnoses have included ADD, ADHD, and absence seizures. The District conducted an evaluation of J.C. during his second-grade year and determined he was eligible for special education under the category of "emotional disturbance." From that point forward, the District developed an IEP for J.C. with the input of an IEP team. Although possessing a normal IQ, the Record shows that J.C. is prone to misbehavior, obstinance, and inattentiveness while at school.

In May 2006, a proposed IEP was issued for J.C. for the 2006-07 school year, J.C.'s eighth-grade year. During the summer of 2006, Plaintiff raised the possibility that J.C. had Asperger's syndrome.[1] In August 2006, Dr. Zake, J.C.'s private psychologist, diagnosed him with Asperger's syndrome. In September 2006, the IEP team met to discuss the IEP then in place and Dr. Zake's diagnosis.

Plaintiff filed a due process complaint with the state in November 2006 challenging the May 2006 IEP. All issues raised in that complaint were resolved by a Settlement Agreement executed in December 2006. Pursuant to this Agreement, the District was required to conduct a multi-factored evaluation (MFE) to assess J.C.'s educational needs, and upon completion, convene a meeting with the IEP team to discuss the results of the MFE. The District was also required to consult with Dr. Zake regarding J.C.'s functional behavioral assessment (FBA), and development of a behavioral

---

[1]

Asperger's syndrome is "a pervasive developmental disorder characterized by severe and enduring impairment in social skills and restrictive and repetitive behaviors and interests, leading to impaired social and occupational functioning but without significant delays in language development." Stedman's Medical Dictionary (27th ed. 2000).

intervention plan (BIP) which was to be incorporated into the IEP in place under the Settlement Agreement.

Dr. Zake completed the FBA in January 2007.  Upon receiving the FBA from Dr. Zake, the District worked to develop the BIP.  The District relied on information from Dr. Zake's FBA when preparing the BIP.

An IEP team meeting was convened in February 2007 to discuss the recently completed MFE and to reconsider J.C.'s eligibility category and evaluate whether he should continue to be labeled as "emotionally disturbed."  All members of the team, except for Plaintiff, agreed that J.C. continued to qualify as a student with a disability under the category of "emotional disturbance" due to his difficulty maintaining relationships, inappropriate behaviors and feelings, and pervasive depression. The IEP team met again in March 2007, this time with Dr. Zake in attendance, to discuss the BIP. The BIP was changed to include some of Dr. Zake's recommendations, and this revised BIP was added to J.C.'s existing IEP.  Thus the "March 2007 IEP" included both the December 2006 Settlement Agreement IEP and the BIP modification.

In May 2007, a meeting was held to develop an IEP for J.C. for the 2007-08 school year. Plaintiff attended this meeting but did not agree to the implementation of this IEP which proposed J.C. be placed in all regular classes rather than be assigned to the special education resource room for a portion of the day.  When Plaintiff refused to consent to this IEP, the District issued a "prior written notice" stating that despite Plaintiff's objections, the IEP would be implemented that fall for the upcoming school year.

Later in May, Dr. Zake wrote a letter to the District indicating that J.C. would not be attending class for the remainder of the school year due to stress and anxiety.  J.C. did not attend school for the

remainder of the 2006-07 school year.  In August 2007, a new IEP for the 2007-08 school year was developed and executed in light of J.C.'s changed condition.  This plan placed J.C. on home instruction and was updated in September 2007 to continue J.C. on home instruction.  At the time of this appeal, J.C. was enrolled in the Odella Virtual Academy, a community school under Ohio law.

**Procedural Overview**

Plaintiff filed a second due process complaint in June 2007.  A hearing was conducted before a state IHO in October and November 2007.  The issues presented before the IHO were whether: (1) the IEP proposed by the school district for the 2007-08 school year provided a FAPE; (2) the District misidentified J.C.'s educational disability; (3) the District's BIP was appropriate; (4) removal from class during the 2006-07 school year resulted in a change in placement; and (5) the District failed to protect J.C. from bullying and harassment.  The IHO rendered a decision in December 2007, concluding it lacked jurisdiction over the question of whether the proposed 2007-08 IEP provided a FAPE and finding in favor of the District on the remaining four issues because Plaintiff failed to meet her burden.

Plaintiff appealed the IHO's decision to the SLRO.  In May 2008, the SLRO rendered a decision upholding the IHO decision in its entirety.  In addition, the SLRO found that the District continued to provide J.C. with a FAPE for the 2007-08 school year.  Plaintiff then appealed the SLRO decision to this Court.

On appeal to this Court, Plaintiff claims the SLRO erred in determining:

- the 2007-08 IEP developed in May 2007 was no longer ripe for adjudication;

- the March 2007 IEP was appropriately considered and provided a FAPE;

- the District properly identified J.C.'s disability as emotional disturbance;

4

- the issue of the validity of the District's 2007 MFE was not properly before the SLRO;

- the District's failure to provide J.C. with an aide and other related services did not deny him a FAPE; and

- Plaintiff failed to meet her burden of proof with respect to all issues.

Plaintiff asks for the following relief from the Court: (1) order the District to develop an appropriate IEP; and (2) order the District to provide "compensatory educational services including, but not necessarily limited to one-to-one tutoring services to assist J.C. . . .; speech/language therapy services, with emphasis on pragmatic language skills; and occupational therapy services" (Doc. No. 13, p. 24).

## OVERVIEW OF THE IDEA

In exchange for federal funding, the IDEA requires states to provide a "free appropriate public education" to "all children with disabilities residing in the State." 20 U.S.C. § 1412(a)(1)(A). Participating states and their local school districts must furnish an appropriate education to all children with disabilities, and must also provide services related to education, such as transportation, physical and occupational therapy, sign language interpretation, and school health services. 20 U.S.C. § 1401(26) (defining "related services"). To provide a FAPE, schools must give children with disabilities "special education and related services designed to meet their unique needs" in the least restrictive environment. 20 U.S.C. § 1400(d). The primary mechanism for delivering a FAPE is an IEP. 20 U.S.C. § 1414; *Board of Educ. v. Rowley*, 458 U.S. 176, 181-82 (1982). An IEP is created to meet the unique educational needs of a disabled child by describing how that student learns and detailing the educational services and instruction that will help the student learn more effectively. *See* 34 C.F.R. § 300.320.

Under the IDEA, the IEP must contain a specific statement of the child's current performance levels, the child's short-term and long-term goals, the educational and other services to be provided, and criteria for evaluating the child's progress. *See* 20 U.S.C. § 1414(d)(1)(A).  Placement decisions must be based on the IEP, and the IDEA requires the school district to review the IEP at least annually and make any necessary revisions to ensure that the child is receiving an appropriate education. 20 U.S.C. § 1414(d).

The IDEA provides a process through which parents who disagree with an IEP can seek relief. The process begins with a complaint to the school district, followed by a due process hearing at which parents are able to voice their concerns to an IHO of the state educational agency, as determined by state law. 20 U.S.C. § 1415(f)(1)(A).  Any party may appeal the result of this hearing to an SLRO. *See* 20 U.S.C. § 1415(g)(2).  Finally, any party aggrieved by the result of the SLRO hearing may bring suit in the appropriate state court or federal district court, and the court may "grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C).  Relief usually takes the form of tuition reimbursement, injunctive relief, or compensatory educational services, and compensatory damages are generally not available. *See, e.g., Polera v. Bd. of Educ.*, 288 F.3d 478, 483-86 (2d Cir. 2002). Compensatory educational services may include supplemental instruction, extended school years, testing accommodations, and assistive technology. *See* 34 C.F.R. §§ 300.105-107.

## STANDARD OF REVIEW

The IDEA's provision governing federal court review of state administrative decisions states: "the court (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C).  The

Supreme Court has construed this provision to mean that initial reviewing courts should make "independent decisions" based on the preponderance of the evidence, but also should give "due weight" to the determinations made during the state administrative process. *See Rowley*, 458 U.S. at 206.

The Sixth Circuit has interpreted this standard of review as a "modified de novo" standard because this Court is required to "give 'due weight' to the state administrative proceedings." *Burilovich v. Bd. of Educ. of Lincoln Consol. Sch.*, 208 F.3d 560, 566 (6th Cir. 2000) (*quoting Rowley*, 458 U.S. at 206). Under this standard, this Court is obligated to independently re-examine the evidence, but with a degree of deference to the determinations made in the course of state administrative proceedings. *Troy Sch. Dist. v. Boutsikaris*, 250 F. Supp. 2d 720, 728 (E.D. Mich. 2003). The "due weight" qualification means "a court cannot simply adopt the state administrative findings without an independent re-examination of the evidence," but also that "the weight due will vary, depending on whether the court is reviewing procedural or substantive matters and whether educational expertise is essential to the administrative findings." *Burilovich*, 208 F.3d at 566.

There are two parts -- procedural and substantive -- to a court's inquiry in IDEA suits. *Deal v. Hamilton County Bd. of Educ.*, 392 F.3d 840, 853 (6th Cir. 2004). "First, the court must determine whether the school system has complied with the procedures set forth in the IDEA. Second, the court must assess whether the IEP developed through those procedures was reasonably calculated to enable the child to receive educational benefits." *Id.* at 853-54

In *Burilovich*, the Sixth Circuit held that "[w]ith regard to procedural matters, a court should strictly review an IEP for procedural compliance, although technical deviations will not render an IEP invalid." 208 F.3d at 566 (internal quotation marks omitted).

With respect to substantive issues, the standard requires that courts not "substitute their own notions of sound educational policy for those of the school authorities which they review." *Id.*  But the deference afforded state administrative findings is less than the "substantial evidence" standard typically afforded to administrative decisions.  *Id.* at 567.

> Because administrative findings in IDEA cases should be afforded less deference than that given to agencies under the substantial evidence test, and in view of the IDEA's preponderance of the evidence standard, we hold that administrative findings in an IDEA case may be set aside only if the evidence before the court is more likely than not to preclude the administrative decision from being justified based on the agency's presumed educational expertise, a fair estimate of the worth of the testimony, or both. A court should defer to the administrative findings only when educational expertise is relevant to those findings and the decision is reasonable.

*Id.*  Thus, while engaging in a de novo review of the Record, this Court is obligated to give due weight to state administrative findings, particularly with respect to state administrative determinations that invoke educational expertise.

## FAPE STANDARD

The IDEA requires the state to provide disabled students with a FAPE -- a "free appropriate public education."  The IDEA defines FAPE as follows:

> The term "free appropriate public education" means special education and related services that --
> (A) have been provided at public expense, under public supervision and direction, and without charge;
> (B)  meet the standards of the State educational agency;
> (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and
> (D)  are provided in conformity with the individualized education program required under section 1414(d) of this title.

20 U.S.C. § 1401(d).  The Sixth Circuit has held that an IEP provides a FAPE when: "(1) the state has complied with the procedures set forth in the IDEA and (2) the IEP developed through the procedures is reasonably calculated to enable the child to receive educational benefits." *Dong v. Bd. of Educ. of*

*Rochester Cmty. Schs.*, 197 F.3d 793, 800 (6th Cir. 1999) (*citing Rowley*, 458 U.S. at 206-07).  In order for any procedural violation to constitute a denial of a FAPE in the instant matter, it must be determined that the violation caused substantive harm to J.C. or Plaintiff. 20 U.S.C. § 1415(f)(3)(E)(ii).

The party who initiates a due process hearing challenging an IEP is the party that bears the burden of proof on its claims. *Schaffer ex. rel. Schaffer v. Weast*, 546 U.S. 49, 62 (2005).  If the party claiming a denial of a FAPE or challenging the adequacy of an IEP fails to meet that burden, that party is barred from obtaining reimbursement.  *See Doe v. Bd. of Educ. of Tullahoma City Sch.*, 9 F.3d 455, 460-61 (6th Cir. 1993).

## DISCUSSION

### The May 2007 IEP is not justiciable.

Plaintiff contends the SLRO erred when it concluded the IEP for the 2007-08 school year, developed in May 2007, was not reviewable because it was moot, having been replaced by the August 2007 IEP.  Plaintiff argues that "simply replacing one IEP with another does not necessarily moot controversies concerning the first IEP" (Doc. No. 13, p. 9) and directs this Court to *Boutsikaris*. However, a key factual distinction was present in that case: the "first" IEP *was implemented* for some period of time.  *Boutsikaris*, 250 F. Supp. 2d at 730.  Here, J.C. and the District were never operating under the May 2007 IEP because it was replaced with the August 2007 IEP before the 2007-08 school year commenced.

Plaintiff also argues the May 2007 IEP is not moot because it is capable of repetition.  Plaintiff cites *Sacramento City Unified Sch. Dist. v. Rachel H.*, 14 F.3d 1398 (9th Cir. 1994), an IDEA case in which the court considered the propriety of placing a moderately mentally retarded student in

mainstream classes.  The district court in *Rachel H.* concluded the student's appropriate placement was in a regular classroom full-time, but noted that "[the student] and the educational demands on her may change and that the IDEA had foreseen such changes in providing for an annual IEP review." *Id.* at 1402.  The Ninth Circuit affirmed, holding that while "[t]his court cannot determine what would be the appropriate placement for [the student] at the present time," the review of the determination that the student should be mainstreamed was not moot because "the conduct giving rise to the suit 'is capable of repetition, yet evading review.'"  *Id.* at 1403 (*quoting Honig v. Doe*, 484 U.S. 305, 318 (1988)).  The court found the parties had fundamental "conflicting educational philosophies and perceptions of the District's mainstreaming obligation," and therefore "the conflict [was] a continuing one and [would] arise frequently," evading review, because of the expiration of the nine-month school year. *Id.*

In *Rachel H.*, the IEP placed the student in a special education class for all academic subjects but, before the school year began, the parents placed the student in a private school.  Here, the District developed a new IEP in August 2007, acceptable to both parties, for the 2007-08 school year after determining the May 2007 IEP was inappropriate given J.C.'s change in condition.  Additionally, this case does not present the kind of fundamental policy dispute present in *Rachel H.* where, even though the school year about which the parents originally complained had expired, the parties were never able to reach an agreement on the issue of mainstreaming and thus could never agree on an IEP. Furthermore, here, because the May 2007 IEP was never implemented, J.C. suffered no harm.

In support of her "capable of repetition yet evading review" argument, Plaintiff also cites *Daniel R.R. v. State Bd. of Educ.*, 874 F.2d 1036 (5th Cir. 1989), a case which presented a similar mainstreaming dispute as *Rachel H.*  However, in *Daniel R.R.* the school actually implemented a

change in placement and removed the student from general education classes. In contrast, again, the instant May 2007 IEP was never actually implemented.

In summary, because the May 2007 IEP was never implemented and because Plaintiff has not established J.C. suffered any negative consequences as a result of the mere proposal of the May 2007 IEP, the IEP is not ripe for adjudication as to whether it provided J.C. with a FAPE.

**The March 2007 IEP provided J.C. with a FAPE.**

The IHO ruled that it lacked jurisdiction to determine whether the March 2007 IEP provided a FAPE because that issue was not raised in the due process complaint. Under the IDEA, the party filing the due process complaint cannot raise issues outside of the complaint unless the other party agrees otherwise. 34 C.F.R. § 300.511(d). Here, Plaintiff and the District did make such an agreement, and substantial exhibits and testimony were presented at the due process hearing regarding the March 2007 IEP. The SLRO concluded the IHO erred by failing to take jurisdiction, but the SLRO also concluded this error was harmless because "although she indicated that she would not rule on the appropriateness of the March 12, 2007 IEP Revision, her Findings of Fact and Conclusions of Law show that she found this revision did not deprive [J.C.] of a FAPE" (SLRO Dec., p. 12).

As a preliminary matter, Plaintiff maintains the *entire* March IEP is subject to a FAPE review. However, only a portion of the March IEP is subject to a FAPE review. This is because the March IEP, which operated from March 12, 2007 through May 21, 2007, was in reality a modification to the IEP adopted in the December 2006 Settlement Agreement. The March IEP simply added the BIP to the existing IEP. Therefore, the IHO only had an obligation to review the BIP for a FAPE.

Also, Plaintiff maintains this Court must conduct an independent de novo review of the March IEP because the SLRO erred when it concluded the IHO had in fact considered the March 2007 IEP

and effectively concluded it provided J.C. with a FAPE (SLRO Dec., pp. 11-14).  This Court agrees

with the SLRO's conclusion that the IHO effectively considered the March IEP.  The IHO's Findings

of Fact include many references to the BIP development and the events leading up to the March IEP

(*see* IHO Dec., p. 12; Findings of Fact ¶¶ 10-20; Conclusions of Law ¶ b).  Furthermore, regardless

of the IHO's analysis, it cannot be disputed that the parties presented evidence about the March IEP

at the due process hearing, and the SLRO independently reviewed the March 2007 Revision and

concluded it provided a FAPE (SLRO Dec., pp. 13-14).

In its due process complaint, Plaintiff alleges that the March 2007 IEP "failed to address the

root causes of [J.C.'s] behavior and generally ignored the recommendations from his FBA" (Due

Process Compl. ¶ 12).  As discussed above, the scope of the review is limited -- whether the BIP

developed pursuant to the Settlement Agreement provides a FAPE.  Both the IHO and SLRO

determined the District fulfilled its obligation under the December 2006 Settlement Agreement to

develop a BIP with the assistance of the designated consultant, Dr. Zake (SLRO Dec., p. 13; IHO

Findings of Fact ¶¶ 11-16).  The District provided Dr. Zake with rough drafts of the document in

preparation for a discussion of the plan at the March meeting.  Many of Dr. Zake's recommendations

and suggestions regarding that plan were incorporated into the BIP (IHO Findings of Fact ¶15).  At

the IEP meeting where the BIP was discussed, additional suggestions that Dr. Zake made were

incorporated into the draft document (IHO Findings of Fact ¶ 18).  Furthermore, the SLRO also made

specific findings regarding the District's consideration of Dr. Zake's suggestions.  For example, the

SLRO found that Dr. Zake noted that J.C. does better when given choices by instructors, and the BIP

recommends that instructors "give [J.C.] a choice to talk about the problem or write about the

problem" (SLRO Dec., p. 13).  This Court agrees with the SLRO that the District fulfilled its

obligations with respect to the development of the BIP and that it provided J.C. with a FAPE.

In its brief to this Court, for the first time, Plaintiff argues that the March 2007 Revision was

ineffective both because "no information from J.C.'s most recent evaluation, i.e. the 2007 MFE, was

included in present levels of performance or incorporated into the development of the annual goals"

(Doc. No. 13, p. 15) and because the March 2007 IEP lacked measurable goals (*id.* at p. 16).  First,

Plaintiff cannot raise these new claims on appeal. *See Coffman v. Michigan*, 120 F.3d 57, 59 (6th Cir.

1997).  Second, as to Plaintiff's complaint regarding the failure to incorporate the 2007 MFE, there

is no requirement that an IEP include specific data points from an MFE.  *See* 34 C.F.R. §

300.320(a)(1).

Plaintiff also argues that this Court must determine whether the "statutorily mandated

procedure had been followed" (Doc. No. 13, p. 14).  The District correctly points out that this is the

first time Plaintiff has raised a procedural violation with respect to the March 2007 BIP.  In her due

process complaint, Plaintiff alleged a substantive violation -- that the BIP "failed to address the root

causes of [J.C.'s] behavior and generally ignored the recommendations from his FBA" (Due Process

Compl. ¶ 12).  Again, Plaintiff cannot raise this new procedural claim on appeal.  *Coffman*, 120 F.3d

at 59.

**The District properly classified J.C.'s disability under the IDEA.**

The District classified J.C. as a child with "emotional disturbance" under the IDEA when J.C.

was in the second grade.  In his 2007 MFE, the District continued to identify J.C.'s disability as

emotional disturbance due to his difficulty maintaining relationships, depression, anxiety, and

inappropriate behaviors.  Plaintiff argues that J.C. has Asperger's syndrome, and therefore he should

13

be classified as a child with autism or "other health impairments," rather than emotional disturbance.

Thus, Plaintiff argues, this incorrect classification constitutes a denial of a FAPE.

Only children with certain qualifying disabilities are eligible for IDEA's benefits. 20 U.S.C.

§ 1401(3)(A) defines "child with a disability" as follows:

> The term "child with a disability" means a child--
> (i)  with mental retardation, hearing impairments (including deafness), speech or
> language impairments, visual impairments (including blindness), serious emotional
> disturbance (referred to in this chapter as "emotional disturbance"), orthopedic
> impairments, autism, traumatic brain injury, other health impairments, or specific
> learning disabilities; and
> (ii)  who, by reason thereof, needs special education and related services.

The IHO concluded the classification of the precise impairment listed within 20 U.S.C. §

1401(3)(A)(i) is not critical in evaluating a FAPE. Rather, the important issue is whether the goals

and objectives are appropriate for the student, regardless of the classification. Thus, the District was

not required to classify J.C. as autistic, or suffering from any other particular disability, so long as the

District recognized the disability and provided services necessary to ensure a FAPE. Even so, the

IHO went on to conclude that Plaintiff "failed to meet [her] burden of establishing that autism is the

appropriate label and that emotional disturbance is inappropriate" (IHO Dec., p. 15). The SLRO

agreed with both these conclusions (SLRO Dec., pp. 13-18).

Under 20 U.S.C. § 1412(a)(3)(B), states are not required to classify IDEA-qualifying students

into a specific category; rather the focus of the mandate is on adequacy of services:

> Nothing in this chapter requires that children be classified by their disability so long
> as each child who has a disability listed in section 1401 of this title and who, by reason
> of that disability, needs special education and related services is regarded as a child
> with a disability under this subchapter.

14

The IDEA "charges a school with the responsibility of developing an appropriate education, not with coming up with a proper label." *Heather S. v. Wisconsin*, 125 F.3d 1045, 1055 (7th Cir. 1997). The SLRO aptly summarized the difficulty in categorizing J.C.:

> It is clear from the evidence presented at the due process hearing that [J.C.'s] disability is not easily categorized. While his physician and psychologist have identified Asperger's Syndrome, which is a disorder that falls at the high-functioning end of the autism spectrum, as one of [J.C.'s] diagnoses, [J.C.] has also received diagnoses including attention deficit hyperactivity disorder (ADHD), obsessive-compulsive disorder (OCD), oppositional-defiant disorder (ODD), depression, asthma, and a seizure disorder. Pet. Ex. 1 at ¶ 4. Obviously, reasonable medical minds can differ as to what [J.C.'s] disability should be called.

(SLRO Dec., p. 15).

The very purpose of categorizing disabled students is to try to meet their educational needs; it is not an end to itself. The classification of J.C. as a child with "emotional disturbance" was a reasonable one and was appropriate for his educational needs. Further, there is no "Asperger's syndrome" category under the IDEA. The IDEA defines "emotional disturbance" as follows:

> (4)(i) Emotional disturbance means a condition exhibiting one or more of the following characteristics over a long period of time and to a marked degree that adversely affects a child's educational performance:
>     (A) An inability to learn that cannot be explained by intellectual, sensory, or health factors.
>     (B) An inability to build or maintain satisfactory interpersonal relationships with peers and teachers.
>     (C) Inappropriate types of behavior or feelings under normal circumstances.
>     (D) A general pervasive mood of unhappiness or depression.
>     (E) A tendency to develop physical symptoms or fears associated with personal or school problems.
> (ii) Emotional disturbance includes schizophrenia. The term does not apply to children who are socially maladjusted, unless it is determined that they have an emotional disturbance under paragraph (c)(4)(i) of this section.

34 C.F.R. § 300.8(c)(4). A finding of any one of the five listed characteristics warrants an emotional disturbance classification. A review of the Record leads this Court to agree with the IHO and SLRO

15

in concluding that J.C. meets the definition of emotional disturbance.  J.C. has an inability to build

or maintain interpersonal relationships, engages in inappropriate behavior, has depressive tendencies,

and, as evidenced from his inability to attend school for the final weeks of the 2006-07 school year,

a tendency to develop physical symptoms or fears associated with issues at school.

By comparison, the IDEA defines autism as follows:

(1)(i)  Autism means a developmental disability significantly affecting verbal
and nonverbal communication and social interaction, generally evident before age
three, that adversely affects a child's educational performance.  Other characteristics
often associated with autism are engagement in repetitive activities and stereotyped
movements, resistance to environmental change or change in daily routines, and
unusual responses to sensory experiences.
(ii)  Autism does not apply if a child's educational performance is adversely
affected primarily because the child has an emotional disturbance, as defined in
paragraph (c)(4) of this section.
(iii)  A child who manifests the characteristics of autism after age three could
be identified as having autism if the criteria in paragraph (c)(1)(i) of this section are
satisfied.

34 C.F.R. § 300.8(c)(1).  The Record reveals no evidence that J.C. has significant difficulties

communicating, that he engages in repetitive activities, or has unusual responses to sensory

experiences.  Additionally, while not dispositive, there is nothing in the Record suggesting a clinical

finding of autism symptoms prior to age three.  While J.C. does demonstrate difficulties in social

interaction, under 34 C.F.R. § 300.8(c)(1), that alone is insufficient to label J.C. as autistic.

Furthermore, the IDEA requires that for a child's disability to be classified as autism, the

adverse affect on the child's educational performance must not be "primarily because the child has

an emotional disturbance, as defined in paragraph (c)(4) of this section." 34 C.F.R. § 300.8(c)(1)(ii).

As discussed above, there is ample evidence in the Record to support the District's finding that J.C.

suffers from "emotional disturbance" under the IDEA's definition of that term.

16

Plaintiff also argues that J.C.'s disability is more appropriately categorized as "other health

impairment," as the IDEA defines in 34 C.F.R. § 300.8(c)(9):

> Other health impairment means having limited strength, vitality, or alertness, including
> a heightened alertness to environmental stimuli, that results in limited alertness with
> respect to the educational environment, that--
>     (i) Is due to chronic or acute health problems such as asthma, attention deficit
> disorder or attention deficit hyperactivity disorder, diabetes, epilepsy, a heart
> condition, hemophilia, lead poisoning, leukemia, nephritis, rheumatic fever, sickle cell
> anemia, and Tourette syndrome; and
>     (ii) Adversely affects a child's educational performance.

The Record simply does not support a conclusion that J.C.'s disabilities fit the definition of "other

health impairment."  There is no evidence J.C. suffers or has suffered from chronic or acute health

problems of the nature of those listed under the definition of "other health impairment."  Thus,

Plaintiff fails to meet her burden to establish that J.C.'s disability was improperly categorized.  J.C.'s

disability meets the IDEA's definition of  "emotional disturbance."

### The validity of the 2007 MFE was not properly before the SLRO.

On appeal to the SLRO, Plaintiff challenged the validity and procedural correctness of the

2007 MFE which was conducted in relation to the December 2006 Settlement Agreement and which

was used to develop the March 2007 BIP.  Plaintiff argued before the SLRO that the MFE was invalid

and unreliable.  However, in the due process complaint before the IHO, Plaintiff only mentioned the

2007 MFE as it related to J.C.'s eligibility determination.  The SLRO concluded:

> Although Petitioners raise the issue of the appropriateness and sufficiency of this MFE
> in their appeal . . . this issue was not raised in their due process complaint.  In that
> complaint, the MFE was only mentioned as it related to the eligibility determination.
> It was never challenged on its own merits for sufficiency or procedural correctness.
> See, Complaint at ¶ 9.  Therefore, the sufficiency of the MFE is outside the scope of
> the SLRO review of the IHO proceedings and will not be considered in this appeal.

(SLRO Dec., p. 14, n.6).  Plaintiff argues the SLRO erred because:

17

> [T]he MFE is so interconnected with the evaluation/identification process as to be virtually inseparable. * * * In the instant case, this Court must conduct an independent review of the SLRO's decision regarding identification of J.C.'s [sic] as emotionally disturbed, which of necessity includes determination of whether the evaluation upon which the identification was made is appropriate.

(Doc. No. 13, p. 18). Plaintiff essentially argues that because she challenged the District's determination of J.C.'s eligibility category of emotional disturbance, she was by implication also challenging the 2007 MFE. However, it is clear that in her due process complaint, Plaintiff was challenging only the result of the MFE (i.e., the categorization of emotional disturbance) and not the content of the MFE itself or the procedure by which it was compiled. Plaintiff was not entitled to raise the new argument before the SLRO and likewise cannot renew that argument here. *See White v. Comm'r of Soc. Sec.*, ___F.3d___, 2009 WL 2003583, at *16 (6th Cir. Jul. 13, 2009) (refusing to consider a claim presented for the first time on appeal or arguments not properly raised below).

Furthermore, even if Plaintiff had properly raised the issue in her due process complaint or at the corresponding hearing, this Court finds no evidence in the Record that the 2007 MFE was inappropriately constructed. The District met all requirements for conducting an evaluation as set forth in 34 C.F.R. § 300.304.

In summary, this Court agrees with the District's characterization of this issue: Plaintiff's "preference that J.C. be labeled autistic rather than ED [emotionally disturbed] does not lead [to] a conclusion that the MFE was inappropriate" (Doc. No. 21, p. 12). Plaintiff's argument with respect to the MFE is yet another challenge to J.C.'s categorization as emotionally disturbed, just in a new form. This Court has already addressed the arguments with respect to J.C.'s classification.

**Plaintiff fails to show an aide and related services are required to provide J.C. with a FAPE.**

The District regarded J.C. as a "child with a disability" under IDEA, and therefore the District had an obligation to provide J.C. with appropriate personalized instruction and sufficient support services reasonably calculated to enable him to receive educational benefits. *See Dong*, 197 F.3d at 800. In defining this obligation, the Sixth Circuit has held that "the IDEA does not require that a school either maximize a student's potential or provide the best possible education at public expense. The statute only requires that a public school provide sufficient specialized services so that the student benefits from his education." *Nack ex rel. Nack v. Orange City Sch. Dist.*, 454 F.3d 604, 613 (6th Cir. 2006) (internal citations and quotations omitted).

After hearing days of testimony from witnesses at the due process hearing, the IHO concluded Plaintiff failed to meet her burden to establish that the District was required to provide J.C. with a one-on-one aide, speech therapy, and occupational therapy. The Record supports that conclusion. *See J.P. ex rel. Peterson v. County Sch. Bd. of Hanover County, Va.*, 516 F.3d 254, 259 (4th Cir. 2008) (holding that factual findings made during state administrative proceedings are entitled to a presumption of correctness, so long as the findings were "regularly made").

The only evidence that J.C. required an aide was a recommendation from Dr. Zake in which he made a *qualified* suggestion that an aide might be helpful. It is noteworthy that J.C. was previously provided a one-on-one aide by the District for a brief period of time. Yet J.C. did not want an aide, and his negative behaviors increased during that time period (IHO Findings of Fact ¶ 41). There was also testimony from the District that an aide would impede J.C.'s independence.

On the issue of speech and occupational therapy, the IHO gave more weight to the District's witnesses who testified that J.C. did not require these services to receive a meaningful educational

19

benefit.  The District's therapists sought input from J.C.'s teachers who observed him regularly in the school environment.  As noted by the IHO, Plaintiff's expert did not opine that any language deficit she identified adversely impacted J.C. in an educational context (IHO Dec., p. 18).  The IHO is in the best position to evaluate witness credibility and this Court affords deference to the IHO's finding on issues of witness credibility. *Bd. of Educ. of Twp. High Sch. Dist. No. 211 v. Michael R.*, No. 02-C-6098, 2005 WL 2008919, at \*23 (N.D. Ill. Aug. 15, 2005).  Thus, the Court finds these additional services were not required to provide J.C. a FAPE.

## CONCLUSION

Plaintiff has failed to carry her burden that J.C. was denied a FAPE at any period of time. Furthermore, the Record supports the finding that compensatory services were not necessary to provide J.C. with an appropriate FAPE, and therefore this Court declines to order such services.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

July 23, 2009
